*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PERCY WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
July 13, 2023

No. 357156
Genesee Circuit Court
LC No. 18-043718-FC

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of armed robbery, MCL 750.529, carrying a concealed weapon in a vehicle ("CCW"), MCL 750.227, felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced him as a fourth-offense habitual offender, MCL 769.12, to prison terms of 360 to 720 months for the armed robbery conviction, and 76 to 180 months each for the CCW and felon-in-possession convictions, to be served concurrently, but consecutive to concurrent two-year prison terms for the felony-firearm convictions. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from the June 29, 2018 robbery of a Speedway gas station in Flint. According to the cashier, a man with a mask confronted her at gunpoint and demanded her money. The man did not take anything, but a female participant took money from the cash register and put it in a black bag. The cashier was unable to identify either of the participants. Sarah Muennix, who worked at a YaYa's restaurant next to the gas station, described seeing a man and a woman arrive in a black Chevy Equinox, park near the restaurant, and engage in unusual activity outside the vehicle. As Muennix watched them for several minutes, she observed them repark the Equinox to another spot, and then the man put on a face mask and ran past the restaurant. Muennix left her desk to investigate and, after confirming that the restaurant was not being robbed, she went outside and saw that there was a commotion at the Speedway gas station. She witnessed the same man and woman exit the gas station, get into the Equinox, and leave. Muennix took three

photographs of the Equinox with her phone, including the license plate, before the car left. A description of the vehicle and the photographs were provided to the police. At trial, Muennix indirectly identified defendant as the male suspect who left in the Equinox. She explained that she saw defendant's photograph and recognized him from his profile.

Shortly after the robbery, a police officer stopped a vehicle that matched the description of the vehicle involved in the robbery. Teaira Moore was driving and defendant was in the front passenger seat, fully reclined. In addition to masks and gloves, the police found a handgun in plain view on the center console inside of the vehicle. Additionally, the police recovered $290 from Moore's brassier, $90 from defendant's pocket, and another $200 from defendant's wallet.

Moore was also charged in this matter. Pursuant to a plea and sentence agreement, she pleaded guilty to charges of unarmed robbery and felony-firearm in exchange for her agreement to testify at defendant's trial. Moore testified that she planned and committed the robbery with defendant. She also testified that after the robbery she drove to an apartment complex where she and defendant divided the proceeds, each receiving $290 dollars, and then drove off together before the police stopped them.

Defendant testified at trial and denied any involvement in the charged offense. He explained that he was at an apartment on the day of the robbery and, when he left the apartment, he saw Moore's vehicle parked outside. As he approached her vehicle, another man got out and walked past him while counting a handful of money. Defendant asked Moore for a ride to his sister's house and the police stopped her vehicle shortly thereafter.

In February 2022, the jury convicted defendant as charged. Defendant moved for a new trial, asserting that his due process rights were violated when one or more jurors saw him in handcuffs while being transported outside the courtroom. The trial court agreed to conduct an evidentiary hearing on that issue before sentencing defendant. That hearing was delayed to accommodate defendant's requests for a new attorney. Further delays ensued when defendant, contrary to the wishes of the prosecutor and the defense attorney, insisted on calling the trial judge as a witness at the evidentiary hearing. The judge then had to recuse herself, and the case was reassigned to a different judge. Defendant's motion for a new trial was denied, and he was sentenced in April 2021.

Defendant now appeals, raising issues through appointed appellate counsel and in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief").

## II. ISSUES RAISED BY APPELLATE COUNSEL

### A. DEFENDANT'S MOTION TO SETTLE THE RECORD

Defendant argues that satisfaction of his due process rights requires that we remand this case to settle the record regarding Juror 11's familial relationship with a witness. We disagree.

Issues of constitutional law are reviewed de novo. *People v Craig*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357896); slip op at 4.

Early during the testimony of Kivana Dudley-Thompson, the general manager of the Speedway, Juror 11 interrupted the proceeding to inform the court that she had realized she might be related to Dudley-Thompson. The juror and the attorneys retired to the judge's chambers for a conversation about the matter, a conversation which they believed was being recorded, and after approximately four minutes,[1] they emerged from the chambers so testimony could resume. Later, outside of the jury's presence, the court made a record of what occurred with Juror 11 during the break:

> *THE COURT*: [W]e had earlier juror number 11 was a little alarmed at our witness, Ms. Dudley-Thompson. She feared she might be related to her, although she was not sure. If she is related to her, she informed all of us in chambers, and we did record this session in private, that it would be like second, third cousin. Isn't that what she said? . . . Okay. That she didn't really recognize her, so it was a very unclear relationship. She didn't recognize her and has no relationship basically is what she said. So, defense counsel believed that—you did not object, but you did have the opportunity to discuss it with Mr. Williams. My understanding is that Mr. Williams does not object to her remaining on the jury. Mr. Shaw, do you want to add to that?

> *MR. SHAW*: Nothing really to add to that, Judge. Given her connection to the witness and how much attention or extra attention she might give her, I wouldn't have kicked her off to begin with. And on top of that, she took her obligation seriously—

> *THE COURT*: Uh-huh.

> *MR. SHAW*: —and she looked at the detail and brought it to our attention and that's what I want.

> *THE COURT*: Yeah. No.

> *MR. SHAW*: So, I'm good with it and I believe my client is as well. Is that correct, Mr. Williams?

> *THE DEFENDANT*: Yes, sir.

> *THE COURT*: You have to say yes so we can hear it.

> *THE DEFENDANT*: Yes. Yes, yes.

> *THE COURT*: You're okay with it?

> *THE DEFENDANT*: Yes.

---

[1] The transcript indicates that the proceedings paused at 12:28 p.m. and resumed at 12:32 p.m.

The court reporter advised defendant that the attempt to video-record the conference had failed, so no transcript of the conference was available because the in-chambers conference with Juror 11 was never recorded. In October 2021, after defendant had filed his claim of appeal, his appointed appellate counsel filed a motion in the trial court to settle the record under MCR 7.210(B)(2) for purposes of appeal. The court denied Defendant's motion seeking to require the participants of the in-chambers conference, including the juror, to record their recollections of what occurred in order to produce a settled statement of facts for purposes of defendant's appeal.

In Michigan, criminal defendants have a constitutional right to appeal their convictions. *People v Peters*, 449 Mich 515, 519; 537 NW2d 160 (1995). "[T]he inability to obtain the transcripts of criminal proceedings may so impede a defendant's right of appeal under Const 1963, art 1, § 20 that a new trial must be ordered." *Craig*, ___ Mich App at ___; slip op at 4 (quotation marks, citation, and alteration omitted). However, a criminal defendant is not automatically entitled to a new trial because a transcript cannot be provided. *Id*.

> [W]hen the surviving record is sufficient to allow evaluation of the appeal, the defendant's constitutional right is satisfied. Whether a record is sufficient in a particular case will of course depend upon the questions that must be asked of it. That is, where only a portion of the trial transcript is missing, the surviving record must be reviewed in terms of whether it is sufficient to allow evaluation of defendant's claim on appeal. [*Id*. at 5 (quotation marks, citations, and alterations omitted.]

In this case, "the surviving record is sufficient to allow evaluation of the appeal" for two reasons. First, the court and the parties' attorneys gave a satisfactory summary of the in-chambers conversation on the record after the matter was resolved. Second, the record that was preserved is sufficient for us to evaluate this issue on appeal because defendant clearly and unambiguously waived any challenge to the juror's presence on the jury.

A waiver is "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012) (quotation marks and citation omitted). A defendant cannot allow counsel to consent to a procedure only to object later as this would provide "a defendant with 'an appellate parachute.' " *Id*. at 313. Defendant was given an opportunity to directly address any concerns he had about Juror 11, and he unambiguously stated multiple times that he had no objection to allowing the Juror to remain on the panel. Therefore, defendant cannot now seek to use Juror 11 as an appellate parachute.

In conclusion, defendant is not entitled to a remand nor a new trial based on the fact that a transcript of the in-chambers conversation about Juror 11 was unavailable because the court effectively summarized the conversation on the record and because defendant waived his right to challenge Juror 11's presence on the jury.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel and that the trial court erred by denying his ineffective-assistance claims without conducting an evidentiary hearing. We disagree.

Defendant preserved his ineffective-assistance claims by raising them in a motion for a new trial and requesting an evidentiary hearing. However, an evidentiary hearing is only necessary if the record is insufficient for appellate review of defendant's claims. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Moreover, to justify an evidentiary hearing, a defendant must make an adequate offer of proof to show that there is a question of fact to support an asserted claim. *People v Simmons*, 140 Mich App 681, 685-686; 364 NW2d 783 (1985). A trial court's decision whether to conduct an evidentiary hearing is generally reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. *Id*. at 217. Where an evidentiary hearing is not held, this Court reviews a defendant's ineffective-assistance claim for errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). Any factual findings by the trial court are reviewed for clear error. *Id.* Whether the facts as found by the trial court establish a violation of the defendant's right to the effective assistance of counsel is a question of constitutional law, which is reviewed de novo. *Id*. To demonstrate ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which involves consideration "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). This Court will not substitute its judgment for that of trial counsel regarding matters of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Counsel will only be found ineffective on the basis of a strategic decision if the strategy employed was not sound or reasonable. *People v Cline,* 276 Mich App 634, 637; 741 NW2d 563 (2007). To succeed on a claim of ineffective assistance of counsel, a defendant must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Leffew*, 508 Mich at 637(quotation marks and citation omitted). "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Leffew*, 508 Mich at 637 (quotation marks and citation omitted).

In this case, we are satisfied that the existing record is sufficient to review defendant's ineffective-assistance claims or, to the extent that some claims are dependent on facts not of record, defendant failed to present an offer of proof demonstrating facts to be established at an evidentiary hearing. Therefore, the trial court did not abuse its discretion by denying defendant's request for an evidentiary hearing. We further conclude that defendant has not established that he was denied effective assistance of counsel.

## 1. JURY INSTRUCTION

Defendant first argues that trial counsel was ineffective for not objecting to the trial court's jury instruction, modeled after M Crim JI 4.4, which allowed the jury to infer consciousness of guilt if it found that defendant tried to hide after the crime. We disagree.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). However, even flawed instructions "do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." *People v Bartlett*, 231 Mich App 139, 143-144 (1998). Jury instructions properly may include any theories supported by the evidence. *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). Evidence of a defendant's flight or attempt to hide from the police is relevant to show state of mind and consciousness of guilt. *People v Cutchall*, 200 Mich App 396, 400-401; 504 NW2d 666 (1993), overruled on other grounds by *People v Edgett*, 220 Mich App 686, 691-694 (1996).

At trial, evidence was presented that defendant fully reclined his seat when Moore's vehicle was stopped by the police, and the officers were therefore unable to see defendant as they approached Moore's vehicle. In her closing argument, the prosecutor argued that this evidence demonstrated that defendant was attempting to hide from the police, which showed his consciousness of guilt. The trial court instructed the jury as follows:

> There has been some evidence that the defendant tried to hide after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and if true, whether it shows that the defendant had a guilty state of mind.

Whether there is evidence to support the trial court's instruction is a matter that can be determined from the trial record, so it was not necessary to conduct an evidentiary hearing on this issue. The testimony at trial established that when the police stopped Moore's vehicle, they were not able to initially see defendant because he was lying fully reclined in the front passenger seat. The prosecutor's theory at trial was that defendant reclined the front seat in an effort to hide from the police. Because there is evidence to support the trial court's decision to give M Crim JI 4.4, and because the court properly advised the jury that it was up to it to decide whether defendant was actually attempting to hide and, if so, whether he did so because of consciousness of guilt or for other innocent reasons, any objection by defense counsel would have been futile. The failure to make a futile objection does not amount to ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Therefore, trial counsel's decision not to object to the relevant instruction did not constitute ineffective assistance.

## 2. IDENTIFICATION TESTIMONY

Defendant also argues that defense counsel was ineffective for failing to object to Muennix's identification testimony at trial. As further explained in § II(C), *infra*, Muennix's identification testimony was inadmissible under MRE 602. We agree that Defendant's trial counsel's performance fell below the objective standard when he failed to object to the

identification during trial. But without sufficient cross-examination on the issue, or an evidentiary hearing, we are not able to answer the question of whether trial counsel was deficient for failing to move to suppress identification or move for a *Wade* hearing.[2] Regardless of trial counsel's performance related to the identification, the other evidence of Defendant's guilt prevents him from establishing outcome-determinative prejudice.

At the threshold, irrespective of trial counsel's deficient performance related to Muennix's identification, Williams cannot establish a reasonable probability that the result would have been different if trial counsel handled the issue appropriately. "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Leffew*, 508 Mich at 637 (quotation marks and citation omitted). Assuming counsel objected to Muennix's identification at trial or succeeded on a motion to suppress the identification, the body of evidence still points to Williams's guilt. Even without Muennix's identification testimony, the prosecution presented the cooperator, who identified Williams. The prosecution also presented evidence that shortly after the robbery, police found Williams in the car used during the robbery, with money from the robbery in his pocket, and instrumentalities of the robbery nearby. In other words, we would still be confident in outcome at trial.

Whether trial counsel was deficient for deciding not to move to suppress the identification and deciding not to move for a *Wade* hearing is a harder question to answer. When the prosecution uses an impermissibly suggestive pretrial identification procedure, it may violate due process. See *People v Posey*, 334 Mich App 338, 347-348; 964 NW2d 862 (2020), citing *Neil v Biggers*, 409 US 188, 196-198; 93 S Ct 375; 34 L Ed 2d 401 (1972), and *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). The defense may move to suppress identification, which would require the trial court to make a series of findings before admitting the identification testimony. See *Posey*, 334 Mich App at 347-350. This includes determining whether the prosecution used an impermissibly suggestive procedure, whether the procedure created a substantial likelihood of misidentification, and whether despite an impermissibly suggestive procedure, there is an untainted, independent basis for the in-court identification. See *id*. "We have not extended this pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers." *Id*. at 350, quoting *Perry v New Hampshire*, 565 US 228, 231-233; 132 S Ct 716; 181 L Ed 2d 694 (2012). Instead, when the pretrial identification does not involve the police, the Supreme Court has held:

> [I]t suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt. [*Perry*, 565 US at 233.]

Unlike other cases addressing potentially tainted identification testimony and trial counsel's handling of that testimony, here, we do not know how the witness was able to identify Williams or what role, if any, the prosecution had in that identification. In *People v Posey*, this Court held that trial counsel was not ineffective for failing to object to or move to suppress identification.

---

[2] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

*Posey*, 334 Mich App at 347-353. There, an eyewitness failed to identify the defendants in pretrial photo arrays, instead, identifying other individuals in the photo arrays as the culprits. *Id*. at 345-346. At trial, however, he identified both defendants as the culprits. *Id*. Trial counsel "aggressively challenged" the witness's identification during cross-examination, highlighting that the witness only changed his mind and was able to identify the defendants after viewing news broadcasts about the incident. *Id*. at 351. See also *id*. at 351 n 4 (noting that the defendant did not argue that the witness's viewing of the news broadcast tainted the identification so as to implicate due process). This Court concluded that trial counsel's performance was not deficient because the record established that the pretrial identification did not involve the prosecution at all and trial counsel aggressively cross-examined the witness about how he changed his mind. *Id*. at 350-351. Unlike *Posey*, in this case, the record is silent on whether Muennix's trial identification was the result of improper law-enforcement activity. The record does not indicate how she was able to identify him at all. Also, unlike *Posey*, Williams's trial counsel did not cross-examine the irregularities with her identification.

Based on the record before us, we are unable to determine whether trial counsel was deficient. Without a *Ginther* hearing, we must review Williams's ineffective-assistance claims for errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). And a defendant usually must make an adequate offer of proof to justify an evidentiary hearing. *People v Simmons*, 140 Mich App 681, 685-686; 364 NW2d 783 (1985).[3] On this record, there is no evidence that Muennix's identification testimony was the result of police tactics. But the nature of defendant's claim and the potential defects he has alleged make it difficult, if not impossible, for someone in his position to make an offer of proof. As stated above, defendant cannot establish that these deficiencies were outcome-determinative, so he cannot establish ineffective assistance of counsel on this issue.

The most likely explanation for Muennix's identification testimony is that she learned Williams's name when she appeared as a witness during the preliminary examination, and she looked up his photo afterward, allowing her to identify him at trial. But the reality is we do not know.[4] Because the actual deficiency (related to trial counsel's failure to object and cross-examine) and the possible deficiency (related to trial counsel's decision not to move to suppress) were not outcome-determinative, we cannot conclude that an evidentiary hearing is necessary to resolve this appeal. But we acknowledge its benefits. Here, because of the other evidence of Williams's guilt, the risk of wrongful conviction based on a faulty identification appears to be low.

---

[3] Although *Simmons* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 5 n 1.

[4] One can easily imagine a similar situation in which the prosecution violates its discovery obligations related to pretrial identification procedures and fails to disclose the violation, resulting in a nearly identical record to the one before us. To be clear, there is no indication of such a violation in this case.

An evidentiary hearing could have resolved this concern altogether. It would also undoubtedly increase confidence and transparency related to the fairness of Williams's conviction.

### 3. IMPEACHMENT

Defendant argues that trial counsel was ineffective for not impeaching Muennix with alleged inconsistencies with her prior testimony or with other evidence. We disagree.

The cross-examination of witnesses is a matter of trial strategy. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

In this case, while trial counsel might not have exhausted every possible avenue of impeachment, Muennix was thoroughly and effectively cross-examined. Defense counsel did challenge Muennix's identification testimony by questioning her regarding her vantage points from inside her office, the distance between her and the suspects as they left the Speedway, whether obstructions impeded her view, and alleged inaccuracies in her description of the suspects. Thus, the record does not support defendant's claim that counsel failed to adequately challenge Muennix's testimony. As the trial court observed, the fact that another attorney may have cross-examined Muennix differently does not establish that counsel was ineffective. Because the record demonstrates that counsel's efforts to impeach Muennix were reasonable, the trial court did not err by rejecting this ineffective-assistance claim. Further, the trial court properly determined that this claim was not dependent upon facts not of record, and therefore, it did not err by deciding this issue without an evidentiary hearing.

For these reasons, we conclude that defendant has failed to establish ineffective assistance arising from the cross-examination of Muennix.

### 4. ALIBI WITNESS

Defendant testified at trial that he was at Joyce Turner's apartment at the time of the robbery. He claimed that he saw Moore parked outside as he was leaving Turner's apartment after the robbery and asked her for a ride. Shortly thereafter, the police stopped Moore's vehicle. Defendant's offer of proof on this issue consists solely of his affidavit in which he avers that he informed counsel of this witness, but counsel failed to investigate or call Turner as a witness. Defendant did not present any affidavit from Turner or other offer of proof showing the substance of Turner's proposed testimony. When an ineffective-assistance claim is premised on an attorney's failure to call an alibi witness, the defendant must demonstrate that the witness would have provided favorable alibi testimony. *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994). Without an appropriate offer of proof, the trial court did not err by ruling that defendant had not established facts to support a claim of ineffective assistance of counsel, or to justify an evidentiary hearing on this issue.

### 5. COMMENT ON DEFENDANT'S PRIOR INCARCERATION

Defendant also argues that defense counsel was ineffective for failing to object when Moore referenced his prior incarceration during her testimony. We disagree.

Just before Moore testified, outside the presence of the jury, the prosecutor stated on the record that Moore had been advised not to mention defendant's prior incarceration. The trial court similarly instructed Moore that she was not to refer to defendant's prior incarceration. During her testimony, however, in the context of explaining how she made contact with defendant about three or four weeks before the charged robbery, Moore explained that defendant wrote her a message through Facebook, indicating that "he was out." There was no objection to Moore's remark, and the prosecutor continued with the direct examination without further mention of the subject.

Because Moore had been instructed before her testimony not to mention defendant's prior incarceration, defense counsel reasonably could have objected to the challenged response. However, there are situations when defense counsel may reasonably decide that "it is better not to object and draw attention to an improper comment." *Unger*, 278 Mich App at 242 (quotation marks and citation omitted). There are several reasons why it was appropriate for defense counsel not to object. First, the record did not suggest that the prosecutor intentionally elicited the response, particularly considering that the prosecutor, and the court, had instructed Moore not to reference defendant's prior incarceration during her testimony. Second, the jury was likely already aware that defendant was a convicted felon because he was also charged with felon in possession of a firearm. Third, Moore's response was somewhat ambiguous. She referenced that defendant "was out," but she did not directly refer to incarceration. Even if the jury made this inference, because the response did not specify what defendant was incarcerated for, the response was no more prejudicial than the jury's knowledge that defendant had a prior felony conviction. Fourth, the prosecutor continued the line of questioning without highlighting or drawing attention to the inappropriate response. Under these circumstances, defendant's interests were best served by defense counsel's decision not to object because an objection would have only served to highlight the response, which otherwise was brief, unintentional, and not particularly prejudicial. Furthermore, because this claim is not dependent upon facts outside the record, an evidentiary hearing was not necessary to resolve this claim.

Therefore, we conclude that defendant has failed to establish that his trial counsel rendered ineffective assistance by declining to object to Moore's inappropriate comment.

## 6. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution, during its closing arguments, improperly vouched for the credibility of its witnesses, and defense counsel rendered ineffective assistance by failing to object. We disagree.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236 (citation omitted). A prosecutor may not vouch for the credibility of a witness by implying that he or she has some special knowledge that the witness is testifying truthfully or untruthfully. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). However, it is permissible to argue from the facts and testimony that a witness is or is not credible. *Id*.

Defendant argues that the prosecutor improperly vouched for the police when making the following remarks during her rebuttal argument:[5]

> And he also testified that he had no money on him. Well, we just know that's not true. There was $290.00 admitted into evidence that was found on him and in his wallet. I don't think the police would put their own money into evidence on this case. That was his money that he got from the armed robbery which was the same amount of money that Teaira Moore had on her, and she said they split it halfway, and he happened to have the same exact [amount] of money on him in similar denominations, no 50's, no 100's, just the make up of the 20's, 10's and 5's that were taken from that store.

Moore testified at trial that she and defendant equally divided the robbery proceeds just before they were stopped by the police, with each receiving $290. Testimony was presented at trial that, after the police stopped Moore's vehicle, they recovered $290 from Moore's sports bra, $90 from defendant's pocket, and another $200 from defendant's wallet. Defendant, however, testified that he did not have any money on him at the time of the stop. Because defendant's testimony directly contradicted the testimony of both Moore and the arresting officers, it likely came as no surprise that the prosecution argued that its witnesses were credible while defendant was not. When viewed in context, the prosecutor's statement that she did not believe "the police would put their own money into evidence" was not an attempt to vouch for the witnesses' credibility by asserting special knowledge of their truthfulness. Rather, she was explaining that, based on the evidence presented, either defendant was lying or the police planted the money; her comment was to illustrate the prosecution's position that the latter scenario appeared highly improbable. We therefore, conclude that the prosecutor's comments were appropriate arguments in which she advocated for inferences that were supported by the record. Further, because this issue was not dependent upon facts not of record, the trial court did not err by declining to hold an evidentiary hearing on this issue.[6]

---

[5] We note that on appeal defendant has failed to specify the comments by the prosecution that purportedly vouched for the credibility of the police. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *Matuszak*, 263 Mich App at 59. Providing an issue with only "cursory treatment constitutes abandonment of the issue." *Id*. Therefore, we could deem the issue abandoned. However, because this information can be gleaned from defendant's lower court motion, we exercise our discretion to address the merits.

[6] Defendant also argues that counsel was ineffective for failing to object to the prosecutor's remarks during closing argument, which defendant contends improperly vouched for Moore's credibility as a witness. However, as discussed in § III, *infra,* the prosecutor's remarks were not improper, and therefore, defense counsel was not ineffective for failing to make a futile objection. *Ericksen*, 288 Mich App at 201.

Thus, we conclude that defense counsel did not render ineffective assistance by declining to object to the prosecution's argument because the argument was appropriate, so an objection would have been futile.

## 7. JUROR 11

Defendant argues that defense counsel rendered ineffective assistance by advising him to allow Juror 11 to remain on the juror. We disagree.

As is discussed in § II.A, *supra*, defendant takes issue with the fact that a juror who possibly had a familial relationship with a witness was allowed to remain on the jury. The record is sufficient for us to conclude that, contrary to defendant's argument on appeal, defense counsel did not render ineffective assistance by advising defendant that the Juror should be allowed to remain. While the in-chambers conversation with Juror 11 was not recorded, the judge and attorneys all agree on its substance—the juror thought that she might be distantly related to the witness, she was not certain if they actually were related, she did not recognize the witness, and even if they were biologically related, she had no social relationship with the witness. On appeal, defendant argues that "[t]here does not appear to be a valid reason to leave this juror on the jury, considering [two alternate jurors] were viewing the trial." However, defense counsel offered multiple valid reasons on the record to allow her to stay on the jury: she did not have any actual relationship with the witness, and she proved herself a diligent juror who took the role seriously. Therefore, allowing the juror to remain was a valid strategic choice, and we do not second guess defense counsel on matters of trial strategy. *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019).

Therefore, defendant cannot establish ineffective assistance of counsel arising from the decision not to seek Juror 11's removal.

## 8. JAIL CREDIT

As is discussed in § II.G *infra*, defendant did not receive credit for the time he served pending trial. Defendant summarily asserts that defense counsel, knowing that defendant was not receiving credit for time served, was ineffective for not requesting a prompt sentencing hearing while postconviction matters were pending. Defendant asserts that he should be awarded sentence credit as a remedy for this ineffective-assistance violation. However, the trial court repeatedly advised the parties that it would not sentence defendant until it resolved his postconviction motion for a new trial. Given the trial court's stated position, any request to sentence defendant before his postconviction motion was decided would have been futile. Counsel is not ineffective for failing to make a futile motion. *Ericksen*, 288 Mich App at 201.

In conclusion, each of defendant's claims of ineffective assistance of counsel are without merit, and the record is sufficient for us to so conclude without remanding for an evidentiary hearing.

## C. IDENTIFICATION

Defendant argues that the identification testimony from Muennix was inadmissible. We agree. Muennix's identification of Williams was inadmissible because it lacked foundation. See MRE 602.

Because defendant's substantive challenge to the admissibility of Muennix's identification testimony was not preserved with an appropriate objection at trial, MRE 103(a)(1), we review defendant's substantive claim of error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks, citation, and alteration omitted). Here, the erroneous admission of Muennix's identification testimony satisfies the first two prongs, but not the third.

The record does not reflect that Muennix ever identified defendant before the trial. At the preliminary examination, Muennix testified to events leading to the robbery at issue, but she did not identify defendant. Neither the prosecution, nor the defense asked whether she could identify Defendant during the preliminary examination, and she did not testify about seeing a photo of him. At trial, however, Muennix was able to identify defendant, albeit through a convoluted direct examination.

On one hand, her testimony established that she was not able to clearly see the male robber's face. She testified that during the incident she was not able to get a clear look at the male robber's face other than his side profile and close cropped hair. Nonetheless, the prosecution successfully used Muennix to identify Williams as the male robber at trial. Immediately after Muennix testified that she was not able to clearly see the male robber's face, the prosecution elicited the following testimony:

> *Q.* At some point later on your own did you ever view a picture of somebody who became known to you as Percy Williams?
>
> *A.* Yes, I did, and it was the person that I did, based on the side profile and the hair and everything, it was—
>
> *Q.* You recognized that as similar or the same characteristics?
>
> *A.* —yes. I recognized from the profile and yes.
>
> *Q.* Okay. And that person that you saw the picture of, do you see that person in court today?
>
> *A.* Yes, I do.
>
> *Q.* And can you state what he's wearing or where he's seated?

*A*.  He's wearing the blue shirt and tie.

[*The Prosecutor*]:  May the record reflect that the defendant has been identified?

[*Trial Counsel*]:  She pointed to him.

[*Trial Court*]:  All right.  The record will reflect that the witness has identified the defendant.

To summarize and simplify, Muennix somehow learned the name Percy Williams and found a photo of him somewhere.  She recognized the photo as the male robber (who she previously stated she did not see clearly).  She then recognized Percy Williams at trial as the person in the photo.  The identification rested on a chain of inferences: if the person in the photo is the male robber, and the person in the photo is Percy Williams, then Percy Williams is the male robber.

Muennix was the only eyewitness other than the cooperator.  Trial counsel did not object to the in-court identification.  Likewise, trial counsel did not question Muennix about the picture she saw, how she found the picture, how Percy Williams "became known to her," how the photo was associated with the name Percy Williams, or why she did not report or testify to the identification earlier than trial.  It remains unclear whether Muennix's first identification of Williams was at the trial.  It is also unclear when the prosecution learned that Muennix was able to identify Williams and when or whether the prosecution notified the defense of Muennix's identification and any potentially exculpatory evidence related to Muennix's identification, including her use of a photo she independently located or had been provided to make the identification.

Defendant argues that Muennix's testimony was inadmissible because it was the result of overly suggestive law enforcement tactics.  But he has failed to establish that her identification was the result of law enforcement tactics, as opposed to something else.  See *Posey*, 334 Mich App at 349-351 (admitting identification testimony, where witness could not identify defendants in photo array, but relied on subsequent viewing of surveillance videos on a television news broadcast to identify defendants at trial).  Likewise, he has not established that her viewing him at counsel table during the preliminary examination rendered her identification testimony inadmissible.[7]  We, therefore, reject these arguments.

---

[7] Our Supreme Court has recognized that under certain circumstances, a one-on-one confrontation between a witness and the accused at a preliminary examination may constitute a suggestive identification procedure.  See *People v Solomon*, 391 Mich 767, 767; 214 NW2d 60 (1974), adopting the dissenting opinion of Chief Judge Lesinski in *People v Solomon*, 47 Mich App 208, 217; 209 NW2d 257 (1973).  In this case, however, Muennix did not identify defendant at the preliminary examination and there is no evidence that her in-court identification was based on anything that occurred at the preliminary examination.  Moreover, defendant's reliance on *Solomon* is misplaced because its facts are distinguishable.  In *Solomon*, the witness was told repeatedly before the preliminary examination that police had apprehended the correct person and

The testimony nonetheless was inadmissible under MRE 602. This error satisfies two prongs of plain error, but fails on the requirement of demonstrating outcome-determinative prejudice. Regarding the first two prongs, an error occurred, and it was obvious. MRE 602 provides, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Evidence of personal knowledge can include the witness's own testimony. See MRE 602. The prosecution failed to provide sufficient evidence to support a finding that Muennix was able to identify Williams. According to her testimony, at some point, Muennix saw a picture of "somebody who became known to [her] as Percy Williams." Muennix did not explain how or where she found the picture. She did not explain how she learned the name Percy Williams. She did not explain how she knew the picture was of Percy Williams. She also never testified to how long she knew what Percy Williams looked like. Critically, she never testified that the Percy Williams seated in the courtroom at trial was the same individual she saw (albeit not clearly) during the robbery. She just testified that the Percy Williams seated in the courtroom looked like the individual in the photograph she found, and the individual in the photograph looked like the male robber. In short, there was little if any indication of personal knowledge that made her competent to identify Williams.

This error, however, was not outcome-determinative. There was substantial evidence underpinning defendant's conviction, including the testimony of the cooperating witness. Removing Muennix's identification from the testimony presented by the jury leaves constitutionally sufficient evidence for conviction. This error, therefore, fails to satisfy the third prong of the plain-error analysis.

## D. IMPEACHMENT USE OF DEFENDANT'S STATEMENT

Defendant argues that the trial court erred by allowing the prosecution to introduce, in rebuttal, a statement obtained from defendant after he asserted his right to counsel pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966) to impeach defendant's trial testimony. We disagree.

A trial court's decision to admit evidence is generally reviewed for an abuse of discretion. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). In this case, however, defendant argues that a statement obtained in violation of *Miranda* should be inadmissible for all purposes as a matter of law. Questions of law are reviewed de novo. *People v Hofman*, 339 Mich App 65, 69; 981 NW2d 112 (2021).

After the defense rested, the prosecution announced its intent to call a detective as a rebuttal witness for the purpose of impeaching defendant's trial testimony regarding a statement defendant made after he had invoked his right to counsel. According to the witness, after defendant invoked his *Miranda* rights during his police interview, the witness asked defendant who he was with in the vehicle at the time of his arrest and he responded, "Kimberly," or something to that effect.

---

then defendant was the only person present at the preliminary examination for the witness to identify. *Solomon*, 47 Mich App at 219-220 (LESINSKI, C.J., dissenting). Similar facts are not reflected in this record.

After the trial court reviewed defendant's recorded interview, it agreed that the statement was voluntary and, although it expressed its disappointment that the questioning continued after defendant invoked his *Miranda* right to counsel, it agreed that the statement was admissible for impeachment pursuant to the United States Supreme Court's holding in *Harris v New York*, 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971).

In *Harris*, the United States Supreme Court held that statements obtained in violation of *Miranda* are generally inadmissible but may be admitted as impeachment evidence. *Id*. at 225-226. The Court reasoned that "[t]he shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id*. at 226. The Court also reasoned that barring the use of statements obtained in violation of *Miranda* in the prosecution's case-in-chief was sufficient deterrence against police misconduct. *Id*. at 225. In *Oregon v Hass*, 420 US 714, 715, 722; 95 S Ct 1215, 1217, 1221; 43 L Ed 2d 570, 573, 577-578 (1975), the Court extended the rule from *Harris* to a situation, as in this case, where the defendant was provided with proper *Miranda* warnings, but the police failed to honor the defendant's request for an attorney. Both this Court and our Supreme Court have followed *Harris* and *Hass* to allow statements obtained in violation of *Miranda* to be admitted for impeachment, both where *Miranda* warnings were not given and where the police failed to stop questioning in response to a suspect's invocation of the right to counsel or the right to remain silent after *Miranda* warnings were given. See *People v Graham*, 386 Mich 452, 456-458; 192 NW2d 255 (1971); *People v Stacy*, 193 Mich App 19, 24-25; 484 NW2d 675 (1992). We are bound by the rule of *stare decisis* to follow opinions of our Supreme Court, *People v Metamora Water Serv, Inc*, 276 Mich app 376, 387-388; 741 NW2d 61 (2007), and published opinions of this Court that were issued after November 1, 1990. MCR 7.211(J)(1).

Therefore, the trial court did not err by allowing the use of defendant's statement obtained in violation *Miranda* for impeachment purposes.

E.  MRE 609

We agree with defendant that the trial court abused its discretion by admitting evidence of defendant's prior conviction of carjacking, MCL 750.529a. However, this error was harmless.

"This Court reviews for an abuse of discretion a trial court's determination whether a prior conviction involving a theft component may be used to impeach a defendant." *People v Meshell*, 265 Mich App 616, 634; 696 NW2d 754 (2005). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of principled outcomes. *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014). A close evidentiary question typically cannot be an abuse of discretion. *Aldrich*, 246 Mich App at 113.

The admission of prior convictions for impeachment purposes is governed by MRE 609, which provides in relevant part:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

(b) Determining Probative Value and Prejudicial Effect. For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.

(c) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.

In this case, defendant was convicted of carjacking on March 8, 1995. The underlying offense occurred on March 8, 1995, and he was incarcerated until being granted parole on October 18, 2017. Prior to defendant's testimony, the prosecution informed the court that it intended to impeach him with the carjacking conviction. Defendant objected, and the following exchange occurred on the record:

> *THE COURT*: So, there were two convictions that you're planning to enter?
>
> *MS. SMITH [Prosecutor]*: No, just the carjacking.
>
> *THE COURT*: Just the carjacking, okay. So, I'm not sure what you're saying, Mr. Shaw.
>
> *MR. SHAW [Defense Counsel]*: I am asking that even the carjacking not be allowed.
>
> *THE COURT*: Oh, okay. No. That's denied.

After the court ruled that defendant's prior conviction could be used for impeachment, defendant confirmed that it was his decision to testify in his own defense. During his direct examination defendant testified that he previously pleaded guilty to carjacking, explaining that he pleaded guilty to that offense because he "would accept responsibility because" he "did it." On

-17-

cross-examination, the prosecutor followed up and asked defendant if his previous conviction of carjacking involved an element of theft or dishonesty. Defendant agreed that carjacking involved theft or dishonesty.

The trial court abused its discretion by admitting the impeachment evidence without finding that the probative value of the evidence outweighed its prejudicial effect, as is required by MRE 609(a)(2)(B), and without considering the factors articulated in MRE 609(b). Rather, the trial court summarily overruled defendant's objection without engaging in any analysis of the issue. On February 6, 2020, two days after the trial's conclusion, the trial court issued an order in which it engaged in the analysis that it had neglected during the trial. However, we know of no authority that allows a court to retroactively engage in the proper analysis of an evidentiary issue after a trial's conclusion. Indeed, waiting until after the trial to properly analyze the admissibility of evidence creates a risk that the court would not realize that evidence was inadmissible until it is too late, and it could subconsciously create an incentive for the trial court to conclude that the evidence was admissible so as to avoid admitting error. Therefore, we conclude that for evidence to properly be admitted pursuant to MRE 609 the trial court must conduct the analysis the rule prescribes before ruling on its admissibility, and thus, the trial court abused its discretion by admitting the evidence without first conducting this analysis.[8]

Even if the trial court had conducted the correct analysis prior to admitting the evidence, we would nonetheless conclude that its admission constituted an abuse of discretion. First, more than 25 years had elapsed between the commission of the offense.[9] Second, a conviction for carjacking has little probative value as it pertains to credibility because it does not require proof of deceitful conduct. Third, the similarities between carjacking and armed robbery increased the risk that the jury would consider the carjacking conviction for an impermissible purpose; both crimes involve the use of force in order to commit a larceny. MCL 750.529; MCL 750.529a. Because of the substantial passage of time, the absence of deceitful conduct, and the increased risk of unfair prejudice, the trial court's decision to admit evidence of defendant's carjacking conviction fell outside the range of principled outcomes.

This error does not warrant reversal because it was harmless. MCL 769.26 governs harmless error and provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

---

[8] Even the prosecution seems to concede that the trial court erred and focuses its analysis solely on its argument that the error was harmless.

[9] Notably, the time limit prescribed by MRE 609(c) was not violated because defendant was released from confinement less than ten years before his trial.

This statute represents the idea that "appellate courts should not reverse a conviction unless the error was prejudicial." *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). Preserved nonconstitutional errors are presumed to be harmless, and defendant bears the burden of proving that the error resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006). Reversal is inappropriate "unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009). An error is outcome determinative if it undermined the reliability of the verdict. *People v Feezel*, 486 Mich 184, 203; 783 NW2d 67 (2010).

Defendant has not met his burden to establish that the error was outcome determinative. First, the references to this prior conviction were brief, and they were not a major focal point of the trial. Second, the evidence presented against him was strong. Moore testified that she had committed the robbery with defendant, and they equally divided the money that had been stolen; police found defendant shortly after the robbery in a vehicle that matched eyewitness descriptions of the vehicle involved in the robbery; and defendant was found with $290 on his person, which is consistent with Moore's testimony that they divided the money equally because she also had $290 on her person. Finally, the trial court instructed the jury that the evidence of his prior conviction could only be considered as it related to defendant's credibility, and jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235. Therefore, we conclude that the error was harmless.

In conclusion, the trial court's erroneous admission of defendant's 1995 carjacking conviction was harmless.

## F. PHYSICAL RESTRAINTS AND JUDICIAL BIAS

In a postconviction motion, defendant argued that he was denied a fair trial because of multiple incidents during which jurors allegedly saw him in handcuffs while being transferred to and from the courtroom, and the trial court ordered an evidentiary hearing to address the matter. Judge Celeste D. Bell presided over defendant's trial, but Judge David J. Newblatt presided over the motion hearing because Judge Bell recused herself to testify at the hearing. On appeal, defendant argues that Judge Newblatt denied his motion because Judge Newblatt was biased in favor of Judge Bell, who testified that no jurors could have seen defendant during the one incident for which she was present. We disagree.

Defendant failed to preserve his appellate challenge to Judge Newblatt's impartiality because he did not raise this issue below. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Accordingly, we review defendant's unpreserved claim of judicial bias for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763. "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App at 597 (quotation marks and citation omitted).

In a postconviction motion, defendant argued that he was entitled to a new trial because of three incidents during which jurors purportedly saw him in handcuffs as he was being escorted by police officers outside the courtroom. The trial court agreed to conduct an evidentiary hearing on this issue, and defendant claimed that Judge Bell was a witness to one of the incidents. Although

Judge Bell shared on the record that she did not observe where a juror could have seen defendant in handcuffs, defendant insisted, against the advice of his counsel, on calling Judge Bell as a witness at the evidentiary hearing. Accordingly, Judge Bell recused herself and Judge Newblatt was appointed to hear defendant's motion. Following the evidentiary hearing, Judge Newblatt denied defendant's motion for a new trial.

Defendant's argument that Judge Newblatt was biased in favor of Judge Bell stems from the following comments

> *THE COURT*: Now, Judge Bell, and I don't think it comes as a shock to anybody, I think a lot of Judge Bell.

> *MR. BREMER [Defense Counsel]*: Right.

> *THE COURT*: Not only is she my colleague—.

> *MR. BREMER*: Yeah.

> *THE COURT*: —but I find her to be a fantastic judge, she's a wonderful person—

> *MR. BREMER*: I agree.

> *THE COURT*: —I enjoy having her as a colleague, so—

> *MR. BREMER*: Yeah.

> *THE COURT*: —I mean, I find her to be very credible. And she says that— and that's basically what it was, a close call. So, her testimony is that there was no vision of Mr. Williams in custody at all.

The record does not support defendant's argument that Judge Newblatt denied his motion because he was biased in favor of Judge Bell because of their working relationship. The comments quoted above appear to simply be a candid assessment of Judge Bell's credibility. It would have been impossible for Judge Newblatt to set aside his relationship with Judge Bell when assessing her credibility, and defendant has never contended that he was entitled to have his hearing heard by a judge who did not know Judge Bell. Moreover, Judge Bell was present for only one of the three incidents of which defendant complained. Judge Newblatt's detailed findings lend further support to our conclusion that his decision did not derive from his respect for Judge Bell. Judge Newblatt considered, among other factors, whether the deputies who testified had any reason to lie, the consistency in the testimony of the witnesses who testified that the jurors did not see defendant, the changes of defendant's version of events over time, and the overall implausibility of defendant's version of events.

In conclusion, defendant has failed to establish that Judge Newblatt's decision was the product of bias.

## G. CREDIT FOR TIME SERVED

Defendant argues that the trial court erred by failing to award him credit for time served in jail before he was sentenced. We disagree.

"Whether a defendant is entitled to credit for time served in jail before sentencing is a question of law that we review de novo." *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011).

Defendant was found guilty on February 4, 2020, but, for a myriad of reasons, he was not sentenced until April 30, 2021. Jail credit is generally governed by MCL 769.11b, which provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

In this case, defendant was denied sentence credit because he was a parole violator being held on a parole detainer. As defendant recognizes, our Supreme Court has held that a defendant is not entitled to sentence credit in this situation. See *People v Allen*, 507 Mich 597, 605-613; 968 NW2d 532 (2021); *People v Idziak*, 484 Mich 549, 562-564; 773 NW2d 616 (2009). As explained in *Allen*, 507 Mich at 606, "individuals who are detained in jail for some reason other than the denial of or inability to furnish bond are not entitled to jail credit" and "one such reason is that the individual was a parolee who was arrested on a new charge that might also constitute a violation of his or her parole." The Court explained that "once the individual is held for the parole violation, his or her continued detention has nothing to do with a denial of or inability to furnish bond in the new criminal proceeding[,]" so the individual "is no longer entitled to jail credit pursuant to MCL 769.11b toward any sentence imposed in the new proceeding." *Id.* In this case, defendant never disputed that he was subject to a parole detainer and he does not contend otherwise on appeal. Accordingly, trial court properly denied him sentence credit pursuant to MCL 769.11b.

Defendant alternatively argues that credit should be awarded "under Fifth Amendment and due process considerations," but he cites no authority and does not provide any analysis in support of this argument. We note that in *Idziak*, 484 Mich at 570, our Supreme Court rejected the defendant's argument that a denial of sentence credit toward a parolee's new sentence violates due process and equal protection guarantees. Therefore, we similarly reject defendant's cursory due-process argument in this case.

In conclusion, defendant was properly denied jail credit for the period between his conviction and sentence.

### III. DEFENDANT'S STANDARD 4 BRIEF

In his Standard 4 brief, defendant argues that he is entitled to a new trial because of misconduct by the prosecutor. We disagree.

Defendant concedes that he did not preserve his claims by raising them below. Review of an unpreserved claim of prosecutorial misconduct "is limited to whether plain error affecting substantial rights occurred." *People v Abraham,* 256 Mich App 265, 274-275; 662 NW2d 836

-21-

(2003). Prosecutorial misconduct claims are reviewed on a case-by-case basis. *Mullins*, 322 Mich App at 151. "The test for prosecutorial misconduct is whether the defendant was deprived of a fair trial." *People v Orlewicz*, 293 Mich App 96, 106; 809 NW2d 194 (2011). Unpreserved claims of prosecutorial misconduct will not warrant reversal unless a curative instruction would have been insufficient to alleviate the harm caused by the misconduct. *Unger*, 278 Mich App at 235 (citation omitted).

## A. PERJURY

Defendant first argues that the prosecutor engaged in misconduct by presenting Moore's trial testimony implicating him in the planning and commission of the charged robbery, which defendant asserts the prosecutor knew was false. The record does not support this claim.

As this Court recently explained in *People v Loew*, 340 Mich App 100, 128; 985 NW2d 255 (2022):

> Perjury has been defined as a willfully false statement regarding any matter or thing, if an oath is authorized or required. As noted, a prosecutor's knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. Thus, to prove prosecutorial misconduct on the basis of perjury, a defendant must show two things—first, that a witness knowingly made a false statement, and second, that the prosecutor knowingly elicited the false statement. [citations omitted.]

In this case, defendant has not established support for either required showing.

At trial, Moore testified that the plea agreement with the prosecutor required her to provide truthful testimony in defendant's case. Defendant asserts that this testimony was false because her plea agreement required her to testify consistent with her proffer statement and her statements at her polygraph examination, but did not require that her testimony be truthful. In support of this argument, defendant relies on a transcript of Moore's plea hearing, during which the prosecutor stated on the record that Moore's plea agreement included that she was "required to provide testimony in conformity with her proffer statement she gave and the polygraph statement she gave to testify against her co-defendant in this case." However, the prosecutor later commented that Moore would "repeat the truth" when testifying at defendant's trial and that she had an obligation to be truthful as her case progressed. Moore's counsel assured the court that Moore would offer truthful testimony when they discussed whether they should delay her sentencing until after she testified. In light of these representations, it is apparent that Moore and the parties understood that Moore was required to be truthful when testifying at defendant's trial. Thus, the record fails to support defendant's claim that Moore falsely represented the terms of her plea agreement, or that the prosecutor knowingly elicited any untruthful statements.

Defendant also argues that Moore made false statements in her proffer statement and at her polygraph examination about her prior criminal record. He asserts that Moore admitted at trial that she had at least one shoplifting conviction on her record, but she did not mention this conviction in her proffer statement or at her polygraph examination. However, even if some of Moore's statements in her proffer statement or at her polygraph examination regarding her criminal

history may have been false, because defendant does not contend that these false statements were repeated at trial, he cannot demonstrate that the prosecution elicited perjury.

For these reasons, defendant's argument that the prosecution wrongfully elicited perjury lacks merit.

## B. IMPROPER VOUCHING

Defendant's argument that the prosecutor improperly vouched for Moore's credibility during her rebuttal argument is likewise without merit.

Defendant's claim of improper vouching stems from the following portion of the prosecution's argument:

> But I submit to you when you go through the factors of credibility, (*inaudible*) you determine that she was a credible witness. She seemed to have a good memory, she was there, she remembered everything, she could see clearly. And you can determine whether she had a reason to lie, but you heard her testimony and you saw her. You saw her answer all questions. She didn't minimize anything. She admitted she did drugs, she admitted to everything that was asked, she didn't hide or minimize or anything like that. She testified truthfully based on her memory I submit to you.

Prosecutors are permitted to argue the evidence and reasonable inferences arising from the evidence in support of their theory of the case. *People v Bahoda,* 448 Mich 261, 282; 531 NW2d 659 (1995); *People v Ackerman,* 257 Mich App 434, 450; 669 NW2d 818 (2003). Although it is improper for a prosecutor to express personal knowledge or a personal belief regarding the credibility of a witness, or to vouch for the credibility of a witness by implying some special knowledge about the witness's truthfulness, a prosecutor may comment on a witness's credibility and argue from the evidence that a witness is credible. *Bahoda*, 448 Mich at 276; *People v Meissner,* 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas,* 260 Mich App 450, 455; 678 NW2d 631 (2004). In this case, the prosecutor referred to matters in evidence to argue that Moore was a credible witness. The prosecutor did not assert special knowledge of any facts, unknown to the jury, that Moore was testifying truthfully. Therefore, the prosecutor's remarks were not improper.[10]

In conclusion, defendant has not established that he is entitled to relief on the basis of prosecutorial misconduct.

## IV. CONCLUSION

---

[10] To the extent defendant argues that trial counsel was ineffective for not objecting to the prosecutor's conduct, because the record does not support defendant's claims of misconduct, defendant cannot establish that counsel's failure to object was objectively unreasonable.

-23-

In conclusion, defendant's motion to settle the record was properly denied because the record before us is sufficient for review of his appellate arguments. Each of defendant's numerous claims of ineffective assistance of counsel are without merit. Muennix's identification testimony was admissible because the government did not lead any suggestive identification procedures. The trial court did not abuse its discretion by admitting testimony regarding statements defendant made in violation of his *Miranda* rights because such statements are admissible for impeachment purposes. The trial court abused its discretion by admitting evidence of defendant's prior carjacking conviction, but this error was harmless. Defendant has failed to establish that Judge Newblatt's finding that defendant was not seen by the jury in handcuffs was borne of bias in favor of Judge Bell. Because of his status as a parolee, defendant was not entitled to receive credit for the time he served in jail pending his trial and sentencing. The record does not support defendant's claim that the prosecution intentionally allowed Moore to commit perjury. Finally, the record does not support defendant's argument that the prosecution improperly vouched for the credibility of its witnesses. Therefore, defendant has not established entitlement to any relief on appeal.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado